Please rise. The Honorable Judges of the United States Court of Appeals for the Third Circuit. Oyez, oyez. All persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and give their attention, for this Court is now in session. Vassal of the United States in this Honorable Court, please be seated. Good morning. Good morning, Your Honor. We have one case this morning, and it's United States v. Goode, number 16-3719. Mr. Schumer, please begin. Good morning, Your Honor. My name is Jacob Schumer, and I'm here to represent Ronald Goode, the appellant. May I please reserve three minutes of my time for rebuttal? Sure, ma'am. May it please the Court. Ronald Goode waited years for a hearing on his supervised release violation. Because of that long delay, he lost his chance to serve his state sentence in comparison to his federal sentence. I have a lot of empathy for what you've said. In fact, once upon a time, I made the same type of argument in connection with the Barker case a long time ago. But Judge Darnell Jones has a saying sometimes, I can feel you, but I can't reach you. And in light of Caruso, how in the world do we get around the precedent that we have? So Caruso is a completely different case than this one for two main reasons. And Moody. And Moody as well. Both cases are quite different. Well, and Morrissey before that. I mean, you've got three cases in a row that you've said. I think Morrissey supports us. Morrissey says that you have a right to a hearing within a reasonable time. After the parolee is taken into custody. Exactly. Now when did he come into custody under the federal? Yes, but in Morrissey, the defendant was out on parole and then was arrested on a technical parole violation, not on a new offense. And so that is the context in which Morrissey said you have a right to a hearing within a reasonable time after you're taken into custody. In that case, being taken into custody and the allegation of a parole violation happened simultaneously. It was different than this case where the defendant's arrested on a separate offense by a separate authority that constitutes a violation. Before we get to the Moody and the cases dealing with custody, there never was any motion made in this for a hearing to adjudicate his immediate right to have a hearing. Well, he sent a lot of letters and he sent this back. But even when counsel was appointed, I don't see that any motion was ever made to dismiss him because revocation was not before the court. Counsel never formalized the motion and it would have been better if she had. Well, that's the question before we get going. Are we on plain error here? I believe you're on de novo review because Mr. Good filed three pro se motions objecting to the delay. In those motions, he explained he needed a hearing so that he could serve his sentences concurrently and he invoked his right to due process. And under Rule 51B, what he needed to do was inform the court of the action he wished it to take. And that's what he did. He never made a motion to revocation. That's true. Even counsel never made the motion. That's true. And counsel should have. But I would ask the court to construe his motions liberally given that he's a pro se defendant. And other courts addressing objections to delay have not applied strict preservation rules because the nature of delay, it's difficult to know exactly when the delay becomes too long and thus exactly when the defendant has to object. So in Hall, the Ninth Circuit found a Speedy Trial Act claim preserved where the attorney had acquiesced to the delay, but the defendant had filed letters objecting to that. We'll consider that in chambers. Even on plain error review, I think Mr. Goode prevails. But in regards to Moody and Caruso, in Moody and Caruso, there was no harm to the defendant. Both courts said the defendant had no right to a hearing because the mere filing of a parole violator warrant did not harm him. Here, there is harm. The long delay denied Mr. Goode the right to serve his sentences concurrently. What's your best authority for concluding that he had a right to concurrent sentences? Well, this court said in Burkitt 1 that a loss of an opportunity to serve sentences concurrently is prejudiced. In Smith as well, the Supreme Court said that an incarcerated defendant was prejudiced in violation of his constitutional rights by a long delay because he would lose his chance to serve his sentences concurrently. And in Carchman, the Supreme Court extended that reasoning to apply to a delayed revocation hearing. Well, he had the same right under the old parole system as he has under the precedent system for concurrent sentences. There's a little difference, but it's not absolute. Well, the old parole system is quite different than this system, and Moody and Caruso are quite different from this case with respect to concurrency. First, in Moody and Caruso, there was no indication of any intent that the defendant received a concurrency on the underlying offense. In Caruso, the defendant received a fourth federal concurrency sentence on a state offense, and the state court never said that he was to serve that sentence concurrently with his federal sentence. But in this case, it is all over the state court docket that the state judge wanted the state sentence to run concurrent with whatever federal sentence Mr. Goode received. Counsel, did not the district judge in this case decline to give him credit for time served on the federal sentence? That's correct. But regardless of what the district court judge in this case did or would have done, what's clear is that the state court wanted the state sentence to run concurrent with the federal sentence. But because the delay lasted for so long, Mr. Goode lost his chance to serve the state sentence concurrently with the federal sentence. But he didn't lose his chance. The district court judge merely rejected it. It's not about what the district court judge would have done. It's about what the state court would have done. If the revocation hearing had been held sooner, then the state court could have made the state sentence run concurrent with the federal sentence, regardless of what the federal court would have done. But didn't we establish in, I don't know if I'm pronouncing it right, or something like that? Sure. That there is no right to a revocation hearing until the underlying charges are adjudicated. What Pullman says is that it's reasonable to delay hearing until there's a verdict in the underlying case because the verdict establishes the supervised release violation. But it does not say that it's reasonable to delay the hearing after the verdict. There's very little relevant to be learned after that point. And here, Mr. Goode pled guilty to the underlying offense in October 2014. He twice told the district court about that and asked it to move forward with the hearing. He still waited two years for a hearing. And multiple courts have said that a two-year delay of a hearing, including a supervised release violation, is unreasonable. The time begins either when he's arrested or when he pled guilty in this case or when he was taken into federal custody. And I come back to Moody and Caruso and also Morrissey. Taking him to federal custody seems to be the magic time. And I don't know how I can get around that. Well, but in Morrissey, the defendant was not arrested on a separate offense. He was arrested on a parole violation. Let's come back to Caruso, which was cited in the briefs. Sure. So Caruso doesn't say anything about how to measure delay. This court has always measured delay, even when the defendant's incarcerated, from the filing of the supervised release petition. Caruso is not a case about delay. The defendant was not complaining about a delayed hearing in Caruso. He sought to have an immediate hearing on the parole violator warrant. The court never discusses delay in that case at all. The question then becomes, you know, when do you start the clock? Even if you get around Moody and Caruso, when do you start the clock? I start the clock from the filing of the violation petition. What this court has said in the speedy trial context is you start counting from the date of formal accusation, either arrest or indictment, whichever is earlier. And you say from that date, if it's a presumption of prejudice, would start from that date? Well, that's when you would measure the length of the delay, as whether or not there's a presumption of prejudice depends on the length of the delay. Well, you say the starting date is that date. Correct. But how could that be the law when this court, as far as I know, no court, has ever presumed that prejudice exists in a case involving a post-conviction delay? Well, we don't need to presume prejudice in this case because we've demonstrated prejudice in three different ways. Well, presumed or demonstrated, there's no case that ever says there post-conviction delay is not prejudice. Well, post-conviction delay in and of itself, maybe you can't presume prejudice there, but we have demonstrated actual prejudice that's been caused by the delay. Well, have you demonstrated actual? You have not demonstrated that some witness was not available because of the delay. That's actual prejudice. What you're saying is that you want a specific type of sentencing. I mean, your ability to get that, is that prejudice? Yes, I think this is the clearest kind of prejudice you could possibly have. He's been in prison longer than he should have been. And the Supreme Court said in Smith and Karchman that loss of an opportunity, loss of an opportunity to seek a concurrent sentence is prejudice. And in Smith, the court actually related that to the specific kind of prejudice that the protection against delay is meant to prevent, which is excessive incarceration. So it is crystal clear that he was prejudiced here. He's in prison right now. The state court never intended that he serve his state sentence in full before he started his federal sentence. The other difference, Judge Cowen, you mentioned the difference between probation and supervised release. As I said earlier, it doesn't matter what the district court did or would have done here because it's the state court that wanted a state sentence to run concurrent to the federal sentence and was unable to do so. But even if you just look at the district court, the parole board in Moody and Caruso was empowered by regulation to give the defendant credit toward his sentence for the time he already served on the underlying offense. The district court here did not have that power. Instead, it had sentencing guidelines, which instructed it to impose a sentence of 27 to 33 months. We know that those guidelines have a powerful impact on district court decision making. Yeah, but under either system, it's not automatic that you get concurrent sentences. That's true. The old system or the existing system. So it's not a fait accompli for anyone in your client's position. Well, under the old system, the parole board had the power to credit the defendant for the time he'd already spent in prison. But under the present system, if the judge wanted to, he could do the same thing. Well, the government says he could vary downward from 27 months to zero months. I think that's a much bigger ask than simply asking the court to credit you. The result is the same. The result is the same. That's true. But I think it's much harder to get a concurrent sentence from the district court than it is from the parole board. Because it doesn't have the power to credit you, you have to ask for a downward variance from 27 months to zero months, which this court has said requires extraordinary justification. But, again, regardless of what the district court would have done, what's key here is that the state court wanted a state sentence to run concurrent to the federal sentence. This court recognized that the loss of an opportunity to serve a concurrent sentence is prejudice. The Supreme Court has recognized the same thing. It is the clearest form of prejudice a defendant can suffer, and that's what happened here because of the long delay. How about encouragement? Does that have any consequence in this case, the encouragement case? The issue of encouragement is not relevant to this case. It's about the state compact on retainers. That doesn't play here at all, does it? Well, I think that the Supreme Court recognizes encouragement that a defendant has an interest in a timely revocation hearing because he may seek to serve his revocation sentence concurrent with his underlying sentence, and it cites SNCC when it says that. But that's a horse of a different color or whatever you want to refer to it as. What I think it establishes is the clear prejudice that was suffered here. I see my time's up, and I'll save the rest for tomorrow. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court, Bernadette McKeown for the government. I'd like to start by addressing the claim that there was actual prejudice here, and that claim turns on the claim that the state court would have imposed a concurrent sentence to run, would have ordered its sentence to run concurrently with the federal court. Isn't that what the state court wanted to do? That may be what the state court wanted it to do, but the key point here is the state court had absolutely no right to control the sentence imposed by the federal court. Effectively, that state court would have been requiring the federal court. But what they wanted to do, let's say they, what, continued this 12 times? The sentencing, I believe, was continued 11 times. And so after they continued it, what they were doing was hoping that the district judge here would do the sentence, and then they could do their sentence after that, which in effect would make it concurrent. That makes sense. It happens all the time. I would disagree with that in the sense that it doesn't happen all the time. Well, they certainly wanted it to happen here. The state court judge, that's the result they desired. They had absolutely no right to dictate to our federal judge. And they admit that. They had no right. They had no right. And there was no right to have a hearing, to force a hearing in between the conviction and the sentencing. There's statutory rights. This is federalism at its best. The state is asking, in effect, the federal court to act. And the federal court is saying that it's not going to act. They're certainly not making a demand. No one here is acting out of line. What they're trying to do is to give a concurrent sentence after the federal court does the sentence, and the federal court refuses to do that. Because it would effectively make the federal court sentence concurrent and impose no additional confinement. No, they're just saying, federal court, you do what you're going to do because of the approval violation, and then we'll act. We're trying to coordinate the sentence here. And there's nothing wrong with that. There's nothing wrong with it. But also, the federal court had absolutely no obligation to comply with that request. And it doesn't violate Mr. Goode's due process rights. The point is, don't they have an obligation to have a hearing when he requested a hearing on numerous occasions? No. The court had no obligation to hold the hearing. And that's where... It doesn't? This is not a city trial clause case. No, but we're dealing with someone that wants a hearing, and he wants a prompt hearing, a speedy hearing. Certainly, if it was a trial, he'd want a hearing. And he makes a number of applications, and none of them are fulfilled at all. And this looks like a case where this petitioner fell between the cracks of the state and federal system. I disagree, Your Honor, to the extent that, first of all, the defendant was... This is not a speedy trial clause case. The Sixth Amendment right to a speedy trial does not attach to the revocation process. The Supreme Court has held that. Every court has held that. No one has said that. Therefore, we're looking at due process. Excuse me. Sorry, Your Honor. Your adversary is not even claiming that. No one is claiming that this is a speedy trial. But then it's being analyzed. They're analyzing it at the Sixth Amendment. The cases they're relying on, Smith, Karchman, all involve presumption of innocence, speedy trial clause rights. There are more limited rights in the revocation process. And this is where Moody and Caruso are absolutely controlling here. Because what they tell us is when a federal parolee is arrested on state charges and held, while those charges are fully adjudicated, there is no loss of liberty that attaches. Okay. Put yourself in, or I'm trying to put myself in the head of the district judge here. It was reasonable to wait until the state court adjudicated the guilt. And I think it was October 14, Mr. Goode pled guilty. Is that correct? Yes. But why continue to wait until after that? Because it was reasonable to wait until the case was fully resolved. Meaning he had been sentenced. It was fully resolved in October 14. He pled guilty on October 2014. And it was entirely reasonable for the court to wait at least until after a sentence had been imposed. Mr. Goode, in the interim, tried to withdraw his guilty plea. He sought new counsel during that whole period. It was reasonable for the court. He had no right. But didn't the district court at that point know everything it needed to know with regard to its sentencing for the parole violation? I don't agree, Your Honor. What else did it need to know? It needed to know what sentence that he would face. That way the court could craft a sentence that it felt was appropriate in taking into account the sentence. And also that conveys to the court. It gives the court complete information. But you knew at that point in time that there was a hope of the state court that there would be a piggyback onto the federal sentence. It's sort of, you know, Alphonse and Gaston. But in this case, it was after you, district court. And then it looked like very clearly. That may have been the state court's intention. But what we're talking about here is dual scientific. Our federal judge had the right to handle his federal case from start to finish. The state court had the right to do the state. But the state court cannot dictate to the federal judge. Why shouldn't we say the due process rights of this petitioner were violated when the state court is sitting there waiting for the federal court to move? At the same time, the federal court is waiting there for the state court to move. Both courts know that. And nothing is done in the meantime. The man is just sitting in jail. Ask Judy while I finish. In the meantime, he's petitioning the court or sending letters to the court for an immediate hearing, which is months and months after the offense. Why should we say that this is unlike Carchman or any of the other cases? This is a man who's caught between the federal and the state system and is asking for a hearing and can't get one. And because he has absolutely no due process right to a hearing. And because when he was not given a hearing, he did not violate his due process rights to the extent. And this is what it all comes down to. The district court here had the ability to craft a sentence that would have given him the relief he sought. There was absolutely no impediment to that. The argument about the guideline range is not convincing. Between the parole system that I was brought up under, vast difference, and the system you have under our present sentencing. Vast difference. I agree with that, Your Honor. But in the supervised release context, first of all, the sentencing has always been different than it has in a regular sentencing proceeding. Judges have always had much more flexibility. The guidelines were never mandatory. This case many, many years ago in Swann said that the guidance in the guidelines that said Shell impose a consecutive sentence didn't mean Shell. It meant May. There's always been tremendous flexibility in the supervised release context. Well, that's not so. The district court, unlike the parole board, has no real power to oppose an effective concurrence. And so the old system, the power was there right in the parole board. And the district court doesn't have that. Yes, it has the ability under its general sentencing practices. There's no mandatory guidelines. There never were. The judge could have looked at this case and said, five years was enough. I'm not going to give you any more time. Or the judge could have said, okay, you were convicted in October, you pled guilty in October 2014, and then you told me you wanted a hearing. I didn't give you one. That's 24 months. He could have given him a 24-month reduction from that guideline. Also, he could have said, well, you wrote to me and told me you wanted to come in after you were sentenced because you wanted a concurrence sentence. Well, everybody would want a concurrence sentence. There was no indication there. It wasn't just a question of want. It was a question of he was probably going to get it under the state court if it wasn't sent. But that presumes that he had a right at that point to say, I want to go forward before. Or I should say it another way. Did the district court err and violate his due process rights by not agreeing to hold the hearing at that time? And the answer to that is no. There was no error. There are no cases. The cases that the defense cited that talk about being fully being adjudicated and they don't mention the sentence, every single one of those cases the defendant had not only been convicted but been sentenced. In the ordinary course of a state case, the sentencing is held very close in time to the actual conviction. So in all of these cases, the defendants have been both convicted and sentenced. And that includes in Pullman's, in OIDAC, in this circuit, in this court, and the other cases. Ramos, every single one of them, they have been. How about, I think it's, I'm not too sure it's Burkett or that. That's a speedy trial. Excuse me. How about Burkett, which I think states, if not holds, that your ability to get a concurrence sentence is prejudice. That is in the speedy trial context. Well, there was a debate. If you had a right and you couldn't exercise it because of what they were giving you a hearing, the Burkett, is it? I agree with that. It says that the ability not to have, the ability to get a concurrence sentence is prejudice. Your Honor, that the courts have recognized that in the speedy trial clause context. And that's where that arose in Burkett. That's what the comments in Smith v. Nash and Karchman as well. I take that back. Karchman in, Smith v. Huey, Karchman v. Nash dealt with the Interstate Agreement on Detainers Act. And did make some comments regarding, let me make sure I have that correct. But in any event, there's no question that in the Sixth Amendment speedy trial, that's one of the things they look at. There's no question that that is a factor that should be analyzed in the due process area. However, this is where Moody and Caruso are controlling. Because even though that involved the parole commission, our district court had the exact same ability to craft a sentence that would give the defendant credit. I grew up under the parole system. And there's a vast difference between your ability under the parole system and what we have today. Ask any criminal defense lawyer and he'll tell you. But I would also note that under the parole regulations that were in place at the time of Moody, that the parole regulations recommended, strongly recommended, a consecutive sentence unless certain mitigating factors were present. So there was, even in those cases, the chance that you would get a consecutive, concurrent sentence was very slim. Here, the judge was fully able to craft a sentence that would reflect credit for time served. However, the court measured what was appropriate. Let's forget the law for just a moment and just go down to the practical. October of 2014, the man pleads guilty in state court. The state court indicates that it's trying to wait for the federal court because the state court wishes to do a concurrent sentence. If the federal court had not waited two years before it sentenced until after Mr. Good was out, then Mr. Good would not be in prison today. It's a fact, I think. And what your argument basically is, yeah, that may be true, but Caruso, nobody cited until we reminded you, forecloses it. Caruso and its interpretation of Moody does foreclose that argument. And the courts that have considered it, and this is the Sixth Circuit, the Fifth Circuit, the Second Circuit, in non-presidential decisions. The argument that's being made by Mr. Good is somehow it's not fair. That's correct. It's just not fair what happened here because I could be out. Yeah, I did some bad things, but I was turning my life around, and sure enough, I get out in March. In July, I'm going to the state parole officer, and they come in and they grab me. Is that the way the system is supposed to work? Your Honor, I think in this case, the state's evaluation of its case, they were entitled to evaluate and impose their own judgment. They had no right to force the federal judge, who's considering a different issue, which is you breached my trust. You violated this conditional release, which you were granted by statute. And a judge in that situation should be able to control the sentence by effectively sentencing first and sending it back to the state. The judge loses all control over whether he was given additional time on the federal sentence, and that cannot be a due process error for the court who could have adjusted the sentence to proceed in that fashion. And every defendant would want a concurrent sentence. This is what she wanted, but she could have achieved that. He wanted it, and he was going to get it. That's what kicks it over the line, and he was going to get it. And that gives not just a hope, but that's an actual expectation. Coming back to principles of federalism, our judge had no obligation, nor did it violate Mr. Goode's due process rights to concede control, effectively concede control over how much time Mr. Goode would spend in prison on his violation. He's going first. But that's the point. He was in the state court system. Your point was somehow he was being demanded to go first. No, he was being requested to go first. He was being requested, and he denied that request. Is it reasonable to deny a request when all someone wants is being charged with a crime or the violation of probation or parole? Is it reasonable to be heard on the violation to know what your status is and you're foreclosed from having that adjudicated? It does not. First, we are in plain error territory, and secondly, it's due process. We're talking about due process laws of liberty. Get back to the plain error. I don't see how you could buy that. You did it with a pro se. He did it. He raised three times. He's sentenced in October. He asks in November. He asks in June of the following year, and he asks in January of 2016. And he's pro se. His first request was in June 2014 before he was pled guilty. I thought it was November. No, it was June. The second request was after that, was after he had pled guilty, and he notified the court. And in that he stated, I want to serve my state sentence concurrently. There was no additional information regarding his status in the state court. Well, it's obvious that he wanted a hearing. That's why he petitioned the court. And at that point, the court appointed counsel, and counsel did absolutely nothing for the next 12 months. I don't hold that against you. I don't hold that against you. No, I'm not. I'm not suggesting that. But I'm saying, because counsel may, for whatever reason, the judge was not presented with either a formal motion requesting the hearing, nor was the judge, was a motion filed to dismiss the petition for a violation of due process rights. The first request asked the district court to resolve his probation petition in June of 14. In November of 14, the district court construed that motion, that pro se motion, as a request to lift a federal detainer. That really wasn't what was being requested. I believe, when you read that, his pro se motion, he really is seeking release. He acknowledges he's being held on bail, but he kept saying that he wanted to lift a detainer, go to a halfway house, and finally says, or have a revocation hearing. Well, certainly, there are no cases out there. But then it becomes clear in June of 15, he files a second pro se motion, asking the district court to resolve his probation petition so that his state and federal sentences may run concurrently. There's no question about that. Yes, he made that request. Nowhere in that petition does it say the state court had agreed to that, but he does make the request. What it makes for his own review to be de novo. Your Honor, I would say, yes. He's brought it up, and then he brings it up seven months later in January of 16. But he's not, no one at any point files a motion to dismiss the petition. You're dealing on a pro se. You're expected to file a petition, like an attorney in this case, and he's filing it repeatedly with the court. No, I don't expect that he would have filed the motion to dismiss and deprocess Grams. I expected that his attorney would have if they believed that that was a violation that occurred. The sentence of the attorney on the, in this case, on the petitioner? I agree with you that the attorney should file a petition. The other thing to note is no one, even at the time of the sentencing hearing, the docket that has been attached was not produced at any point in the district court. There's no indication that any of the parties, other than Mr. Good's own statement at sentencing, that the district court had at any point, that the state court had at any point indicated that it would run a sentence concurrent. I did not oppose the defense's request to submit the state court docket so that we could flesh this out fully and the court would have full information. But that information was not presented in the district court. The ODAC case, is that it? ODAC, yeah. You sign them all over your brief, but the judge clearly, though, wished to oppose a concurrent sentence. That case is slightly different. We have a federal lawyer. The judge in that case definitely wanted to oppose concurrent sentences. Well, in ODAC we have Judge Brody sentences him on the new criminal conviction. Judge Du Bois holds the violation petition in abeyance for 12 years, waiting for the entire appellate process to resolve, including the habeas petition. At that point, Judge Du Bois holds a hearing. He states that the delay was reasonable so that we could have full information. He then imposes a consecutive sentence. So in ODAC there was no claim that he lost a concurrent sentence because Judge Du Bois had the ability to at that point say, I'm not giving you any additional time. But what's important about ODAC is they stress that he suffered no loss of liberty as a result of his incarceration during that 12-year period waiting for his hearing because he was not held on the warrant. That's the first principle. There are two major principles from Moody and Caruso. Number one is your liberty interest and your liberty rights are not invoked until you are arrested on that warrant. And the second point is you have to show some other infringement on your liberty interest, meaning a grievous loss of liberty. And that's where the court, and it's not just in the parole context, the courts have extended Moody. As I said, Tippins, we have Tippins, Throneburg, Sanchez all saying the loss of ability to serve a concurrent sentence or a claim of that does not make that a due process violation because the district court of sentences always has the ability to run a sentence concurrently by not imposing any additional time. The fact that Mr. Goodman had been placed in a better position had it happened the way he wanted it to does not amount to a due process violation. The way the state court wanted it to. Again, the state court really had no right to. They concede that. We all concede that. So it's a fair and equity argument. They're making a request of a federal judge, would you sentence first because we'd like to do a concurrent sentence. That's all. And my response would be that the district court said no and the district court did not violate his due process rights by not holding the hearing at that point because he had the ability to adjust that sentence to give him the credit for the time served that he wanted time served at the revocation hearing and the judge chose not to. My final question is, was there any effort made to have the U.S. attorney join in the request to have the federal sentencing take place first? Your Honor, I was actually assigned to this case. This was my, Ronald Good, I prosecuted and I handled all the post-conviction things. I can't even say I was aware of some of the filing. I certainly was aware of the first one because the judge asked for input and after that I am not, I can't say with any certainty that I was even aware that they occurred. What would normally happen in a case like that if they had approached you and said, hey, we'd like to have the federal case go first? What would you, what are the factors you would assess in making that decision? My reaction would have been that, I believe that our position would have been that we would have asked the court to wait for sentencing so that the court had complete information. I can't say for certain, with certain, I didn't know that, no one knew that the state court had ever indicated that it was going to run the sentence concurrently. The most I knew from looking at anything he filed was that he wanted the sentence to run concurrently, which every defendant would. There was just no other indication at that time that I was aware of that he, that the state court had indicated. Had that information been presented, we may have made, you know, made a different decision. Based on the record that was before me, we would have said, Judge, just wait until he's sentenced. And then because he maxed out six months later, he wasn't, there was no need to rush to the hearing then because certainly that seven-month, nine-month period could have been accounted for at sentencing. Thank you. Thank you. That's good. Same way for the, for both. Thank you, Your Honors. The government says... To my knowledge, there was not. I was not trial counsel, but I don't know if there was. I wish there had been. Yeah, that would have seemed to be. What the U.S. Attorney's Office is seeing is just a bunch of continuances. Sure. Without understanding quite why. Maybe they could surmise. They would have seen as pro se filings. And if they had read them, they would understand the issue. So automatically, you know that they're looking for a concurrent sentence. You don't have to say anything, it's just... Well, but Mr. Goode says that the state court had delayed sentencing him. I mean, that's his wish. He's expressing the intent of the state court. It's obvious what the petitioner is seeking. There's no secret. That's why he's looking for a quick, an immediate hearing. Right, but even the reason for it is clear. The government keeps saying that it was reasonable for the court to continue to delay the hearing after the verdict until Mr. Goode was sentenced. It's failed to provide any reason why that was necessary. And the other point is it's particularly perverse to justify delay on that ground in this case because we know from the state court docket that the state court was itself delaying sentencing Mr. Goode because it was waiting for the federal court to go forward. And speaking of federalism, if the government... Sometimes what has to happen is you've got to communicate that to the federal folks to see if they'll join with you in the request. Well, Mr. Goode did. He filed three pro se motions. But, I mean, the attorney that was involved didn't do a whole heck of a lot. That's true, and I wish that more had been done. But the courts talked about federalism. If the government's rule is the case, if the federal court is allowed to delay the revocation hearing until the state sentence is complete, then it will deprive the state court of its ability to ever impose a concurrent sentence. So really, in terms of federalism, the balance lays in favor of Mr. Goode. Why is federalism involved with that? The state court can do whatever it wants to do, and the federal court can do whatever it wants to do. Well, the federal court owes no obligation to the state court to help it impose a concurrent sentence. That's true, fair enough. But just in terms of the interest of each justice system having the ability to control the consecutive or concurrent nature of its sentences, if district courts, as a matter of course, wait to hold revocation hearings until state sentences are complete, then state sentences will never be able to be concurrent. If you could refresh my recollection, after the other attorney was involved, how did you ultimately become involved? I'm on the appellate unit. Okay, thank you. Judge Embro, you discussed essentially how to get around Caruso in this case, and I think there's a few important points there, but two I wanted to emphasize is that Caruso says there's no prejudice. The defendant in Caruso said he was prejudiced because he risked losing mitigating evidence, and the court said you've not identified any mitigating evidence. If you had, it might be a different case. Well, we've identified prejudice here, clear prejudice, the loss of an opportunity to serve his sentences concurrently. Well, the question is whether that is prejudice. As prejudice is understood, we talk of prejudice being Caruso. You know, your witness died and so forth, but that prejudice when they're talking about prejudice, he couldn't get a concurrent sentence. He got a sentence and that's it, you know? Yeah, well, this court and the Supreme Court have said that the loss of an opportunity to seek a concurrent sentence is prejudice, and they said that in the Sixth Amendment context, although Burkett also involves the Fifth Amendment, and in Burkett this court said, I'm sorry, the Supreme Court said in $8,850 that the due process right to a hearing in a reasonable time and the right to a speedy trial, those rights mirror each other. It is the same four-factor Barker test, and this court in Burkett too said the label doesn't matter. There's little substantive difference, this court said, between the two rules, and the court specifically said that the four-factor test is not diminished post-conviction. The court also said that you should adjust the prejudice analysis to the context of the delay. Here the delay is in the context of a revocation hearing, so the loss of a concurrent sentence is the prejudice that the court should recognize. I guess, you know, the last point I would make, you know, I would say that the clearest way just to distinguish me and Caruso, as I said before, are they involve the old parole system. They're analyzing a statute that's been repealed, that's not applicable to Mr. Good. There's no prejudice in those cases. There's no harm from the denial of an immediate hearing. Here Mr. Good was not seeking an immediate hearing. He was seeking a hearing sometime before five years had passed. If he had been given that hearing, he would not be in prison today, and I think the court recognizes how unfair the situation is, and I would ask it not to leave him without a remedy. Thank you very much. Thank you to both counsel. We'll take the matter under advisement. Dick, we'll give you a call momentarily. Very well. All right. This court stands at recess until 2 p.m.